**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 25-CR-150 (TSC) :** |
| | : | |
| **MARK FLETCHER,** | : | |
| **LARRY WHITE,** | : | |
| **MALIK BYNUM** | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S MOTION TO INTRODUCE DEFENDANT FLETCHER'S ANKLE MONITOR EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 404(b)**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to permit the introduction at trial of evidence of a prior bad act for proper-non propensity purposes. At trial, the government intends to introduce evidence of how Defendant Fletcher was identified following the shooting and subsequently located by his ankle monitor a few hours after the shooting. Out of an abundance of caution, the government files this motion and provides notice that it intends to admit evidence of the fact that Defendant Fletcher was placed on GPS monitoring by Court Services and Offender Supervision Agency ("CSOSA") under Rule 404(b) as proper identity evidence.

**I.      FACTUAL BACKGROUND**

On July 2, 2021, around 8:36pm, the decedent, Rosendo Miller, arrived at the 2/4 Quick Trip convenience store located at 1356 Brentwood Road NE, Washington, D.C. The decedent arrived with his friend, J.C., who was driving the car. J.C. parked the car on the street across from the convenience store and the two of them went inside the convenience store. Upon seeing the decedent's designer clothing and Rolex watch, the defendants, who were hanging outside on the

sidewalk near the convenience store, walked over to a parked Volkswagen Passat and obtained firearms from inside the car.  Defendants Fletcher and Bynum are seen on surveillance video tucking an object consistent with a firearm into their waistbands, and each of the three defendants pulled a ski mask over their face and waited for the decedent to come out of the store.

When the decedent exited the convenience store a few minutes later, the defendants pulled the decedent down to the ground, working together in concert.  Defendants Fletcher and White were on top of the decedent with their guns pointed and Defendant Bynum took the Gucci crossbody bag from the decedent's body.  Defendant Bynum also had his gun pointed towards the decedent as he lay on the ground.  While the defendants were robbing the decedent, a single shot was fired from the intersection of Brentwood Road NE and 14th Street NE by an unidentified person.  Defendant Bynum then ran towards the intersection firing his gun.  Defendants Fletcher and White continue assaulting and robbing the decedent while the decedent lay in the street and Defendant White fired his gun into the decedent's body right before Defendants White and Fletcher fled the scene. The decedent died as a result of his gunshot wounds.

Defendants White and Fletcher fled the area in a Ford Fusion parked nearby.  Defendant Bynum and an unidentified male went back to the parked Volkswagen Passat to stash their guns. An eyewitness saw this and called the police. A later search warrant of the Passat revealed two guns in the glove compartment.  One of the guns appeared to be the same gun that Defendant Bynum was seen using during the robbery, with a silver slide, as seen on surveillance video.

Two officers with Metropolitan Police Department ("MPD") identified Defendants Bynum and Fletcher from the surveillance video.  Both officers were personally familiar with Defendants Bynum and Fletcher due to repeated contacts with the defendants.  One officer has known both defendants since 2017 and has personally been involved in prior arrests with both defendants.  That

officer also recognized the Ford Fusion as the same vehicle that was stopped in the 1300 block of Saratoga Ave NE on May 24, 2021, when that car was impounded pending a search warrant.[1] Defendant Fletcher was the driver of that vehicle during the May 2021 stop of the Ford Fusion. The second officer also recognized the individual with the ankle monitor in the surveillance video as Defendant Fletcher.   This officer has known both Defendants Fletcher and Bynum for approximately two years and saw them in the same area weekly.

Officers were able to quickly locate the defendants because of the GPS tracking device (i.e. ankle monitor) that Defendant Fletcher had on due to his court supervision in an unrelated criminal matter.   The GPS data placed Defendant Fletcher in the vicinity of 5348 Gay Street NE, Washington, D.C.  Around approximately 10:52 p.m. on July 2, 2021, MPD located the same Ford Fusion parked outside 5348 Gay Street NE.  This was the same vehicle that Defendants Fletcher and White drove off in earlier. Defendant Fletcher was sitting in the driver's seat, Defendant White was in the front passenger, and Defendant Bynum was in the back seat.   The same Rolex watch that belonged to the decedent was found in the car.

Defendant Fletcher was placed on GPS monitoring by CSOSA on May 6, 2021, following his release after his conviction in D.C. Superior Court case number 2018 CF2 15445 for Unlawful Possession of a Firearm (Prior Conviction)[2].  Defendant Fletcher received a time served sentence and was released to supervision.  On July 2, 2021, during the commission of the crimes charged in the instant case, Defendant Fletcher was wearing his ankle monitor and it was working properly. As seen in the surveillance video (still shot below) of Defendant Fletcher running to the parked Volkswagen to retrieve a firearm minutes before the robbery, Defendant Fletcher's ankle monitor

---

[1] The government is currently attempting to locate reports, if any exist, related to this prior traffic stop.
[2] The GPS monitoring may have also been a term of Defendant Fletcher's supervision from his U.S. District Court for the District of Columbia case, 19-CR-397 (Unlawful Possession of Firearm by a Felon).

was visible.



At the time of his arrest later that evening, Defendant Fletcher was still wearing the ankle

monitor, as pictured below.



## II.    RULE 404(b) EVIDENCE

Federal Rule of Evidence 404(b) functions as a "specialized rule of relevancy." *United States v. Rogers*, 918 F.2d 207, 210 n.2 (D.C. Cir. 1990).  The Rule provides that evidence of other crimes is not admissible "to prove the character of a person in order to show action in conformity therewith."  Such evidence may be admissible, however, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." Fed. R. Evid. 404(b).  As the language of the Rule suggests, Rule 404(b) is "a rule of inclusion rather than exclusion." *Bowie*, 232 F.3d at 929.  All that the Rule prohibits is evidence offered for the sole purpose of showing character or propensity.  *United States v. Cassell*, 292 F.3d 788, 791 (D.C. Cir. 2002) (evidence is prohibited "only" if offered for impermissible inference "that a defendant is of bad character resulting in bad conduct").  As long as evidence is offered for

some other purpose, it is admissible.  *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990).  Thus, "although the first sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of other crimes evidence 'in but one circumstance' – for the purpose of proving that a person's actions conformed to his character."  *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc) (quoting *United States v. Jenkins*, 928 F.2d 1175, 1180 (D.C. Cir. 1991)).

A two-step analysis governs the admission of evidence under Rule 404(b).  *See Sitzmann*, 856 F.Supp.2d at 61-62; *see also Cassell*, 292 F.3d at 794–96 (applying two-step analysis).  First, the evidence must be "probative of a material issue other than character."  *See Miller*, 895 F.2d at 1435 (quoting *United States v. Huddleston*, 485 U.S. 681, 686 (1988)).  Second, the evidence is subject to the balancing test of Federal Rule of Evidence 403, so that it is inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value.  *See Id.* Furthermore, as this Circuit has noted, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair."  *See Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) ("[v]irtually all evidence is prejudicial or it isn't material.  The prejudice must be "unfair.'")); *see also United States v. Pettiford* 517 F.3d 584, 590 (D.C. Cir. 2008) ("the Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value." (internal quotation marks and citations omitted) (emphasis and brackets in original)).  "Rule 403 tilts, as do the rules as a whole, toward the admission of evidence in close cases, even when other crimes evidence is involved."  *Cassell*, 292 F.3d at 795 (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984)) (internal quotation marks omitted); *see also United States v. Morrow*, No. 04-355, (CKK), 2005 WL 3159572 *4 (D.D.C. April 7, 2005) ("[i]n close cases, the rule tilts

toward the admission of the uncharged conduct evidence.").

### III.    ARGUMENT

#### A. Defendant Fletcher's ankle monitor and GPS monitoring is admissible under Rule 404(b) as evidence of identity.

The government must prove that one of the individuals seen in the surveillance video of the robbery and shooting was Defendant Fletcher. The evidence will show that when the decedent arrived at the convenience store, three individuals to include Defendant Fletcher, ran to the Volkswagen Passat parked on the same street to retrieve guns and to pull down their ski masks. These same three individuals then ambushed the decedent and J.C. when they exited the store and proceeded to rob the decedent at gun point.  While Defendant Fletcher's clothing is visible in the video, the ankle monitor serves as a particularly distinctive item of identification.  Furthermore, when Defendant Fletcher was later located and arrested, he was still wearing the same distinctive ankle monitor.

Additionally, the GPS data from the ankle monitor is relevant evidence to show how Defendant Fletcher (and the two other defendants) were located.  Live tracking data provided by CSOSA almost immediately after the homicide enabled MPD officers to quickly locate Defendant Fletcher, who was still inside the same Ford Fusion he fled the scene in.  Accordingly, the ankle monitor and the tracking data it provided is relevant to prove Defendant Fletcher's identity as the perpetrator and to show how law enforcement located Defendant Fletcher a few hours after the robbery and homicide.

For evidence to be admissible under Rule 404(b), the probative value must not be substantially outweighed by the danger of unfair prejudice.  *United States v. Moore*, 732 F.2d 983, 987 (D.C. Cir. 1984).  Here, the probative value of the GPS ankle monitor is particularly high as

identity evidence for Defendant Fletcher. Any potential prejudice to the defendant is further minimized when the facts of the underlying conviction that placed him under supervision and GPS monitoring are not presented to the jury. This Circuit has affirmed Rule 404(b) evidence admitted for identity purposes when such evidence had more potential for prejudice. *See e.g., United States v. Lawson*, 410 F.3d 735, 741-42 (D.C. Cir. 2005) (affirming judgement of district court in a bank robbery case to admit evidence of an uncharged robbery to show that both the charged robbery and the uncharged robbery involved a "taller man wielding a distinctive silver-hammered handgun and a shorter man who collected money from the tellers" as permissible identity evidence under Rule 404(b)).  Here, the government is not seeking to introduce evidence that Defendant Fletcher previously committed a robbery/murder wearing the same clothing.  Rather, the government merely seeks the existence of Defendant Fletcher's ankle monitor, without any of the underlying reasons for why he had it, as evidence to show that he was the same individual who committed the charged offense, and as evidence to explain how investigators located him quickly after the crime.

### B.  The government would not oppose a limiting instruction.

The government may properly offer evidence of the GPS monitoring to explain how Defendant Fletcher was located shortly after the robbery and homicide.  The government does not intend to offer any evidence surrounding the prior conviction, the sentence, or any other fact regarding the GPS monitoring except the single fact that on July 2, 2021, Defendant Fletcher wore an ankle monitor that provided CSOSA with his location data.  Notwithstanding the fact the jury would hear, by stipulation or otherwise, that Defendant Fletcher was previously convicted of a crime punishable by a term exceeding one year, the government would also agree to a limiting instruction in addition to or in lieu of the standard Redbook Instruction 2.231 Other Crimes Evidence.

## IV.    CONCLUSION

For the forgoing reasons, the United States respectfully requests that the Court permit at trial the introduction of the government's proffered evidence.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    /s/ *Iris McCranie*
IRIS MCCRANIE
LAUREN GALLOWAY
Assistant United States Attorneys
N.Y. Bar No. 5011234 (McCranie)
601 D Street, N.W.
Washington, D.C.  20530
(202) 252-7828
Iris.mccranie@usdoj.gov