**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**MARK ANTHONY FLETCHER,**<br><br>**Defendant.** | **Crim. Action No.: 25-CR-150-02 (TSC)** |

## MOTION TO SEVER DEFENDANTS AND
## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Mark Anthony Fletcher, through counsel, respectfully requests, pursuant to Federal Rule of Criminal Procedure 14, that this Honorable Court sever his trial from that of his co-defendants Larry White and Malik Bynum. Severance is required because of the prejudice Mr. Fletcher will suffer due to the disparity in evidence of guilt that will be presented at trial and because it is apparent that his co-defendants' defenses will conflict and be irreconcilable with Mr. Fletcher's defense. At least one of his co-defendants will act, therefore, as a second prosecutor should the trials be joined. [1] Mr. Fletcher requests a hearing on this Motion.

### Factual History

Mr. Fletcher and his co-defendants are charged with First Degree Murder (Felony Murder) and related counts. The three men are accused of robbing the decedent. According to discovery provided by the government, at some point in time, an individual shot in the direction of the defendants and the decedent. The government believes that Mr. White subsequently fired his gun

---

[1] At this time, counsel is not aware of statements the government may seek to introduce. Counsel reserves the right to supplement this motion should the government notice that it intends to introduce statements of Mr. Fletcher's co-defendants.

and that the decedent suffered several gunshot wounds as a result. The decedent succumbed from his wounds on the scene.

## Argument

I.    **THE STRENGTH OF THE EVIDENCE AGAINST MR. WHITE AND MR. BYNUM WILL UNFAIRLY PREJUDICE MR. FLETCHER IN A JOINT TRIAL**.

The evidence that the government intends to introduce against Mr. Fletcher's co-defendants in this case appears clearly and significantly more inculpatory than the evidence it intends to introduce against Mr. Fletcher. The government alleges that Mr. White shot multiple times and killed the decedent and that Mr. Bynum shot multiple times in the direction of the complainant's associate.  The government does not allege that Mr. Fletcher fired any shots during the incident.

In addition, the government seeks to admit evidence against Mr. White and Mr. Bynum that is not admissible against Mr. Fletcher because it was obtained through an unlawful search in violation of his Fourth Amendment rights by placing a GPS monitor on his leg. *See* Defendant Fletcher's Motion to Suppress Evidence Obtained as a Result of Unlawful Warrantless Search, ECF 34; *see also United States v. Wells*, 341 A.3d 1096, 1096 (D.C. 2025). Specifically, the government will seek to admit evidence that the Court Offender and the Court Services and Offender Supervision Agency ("CSOSA") placed a GPS monitor on Mr. Fletcher on May 6, 2021, and following the shooting, police used data from that monitor to locate Mr. Fletcher. The data led to police finding Mr. Fletcher in the driver's seat of a car that had been seen fleeing the scene of the shooting. When police found Mr. Fletcher, Mr. White was sitting in the front passenger seat of the car, and Mr. Bynum was sitting in the back seat. In the car, police found a Rolex that is alleged to have been taken from the decedent and clothing allegedly worn by the perpetrators. Police also

seized the clothing worn by the defendants. This evidence is not admissible against Mr. Fletcher because the evidence is the fruit of the violation of Mr. Fletcher's Fourth Amendment rights when CSOSA placed the GPS monitor on him. *See United States v. Terry*, 909 F.3d 716, 723 (4th Cir. 2018) (holding that evidence seized during a traffic stop, which resulted from an unlawful GPS tracker search, was "fruit of the poisonous tree and should have been suppressed."). If not otherwise inadmissible based on any other Fourth Amendment violation, this evidence, however, would be admissible against Mr. White and Mr. Bynum because the placement of the monitor did not violate their rights. Although severance is not required "merely because evidence against one defendant is more damaging than evidence against the other," *Johnson v. United States*, 596 A.2d 980, 987 (D.C. 1991), severance is required where the evidence against one defendant is so much more damaging than the evidence against the other that the disparity unfairly raises the specter of guilt by association. *See United States v. Mardian*, 546 F.2d 973, 979-81 (D.C. Cir.1976). Mr. Fletcher faces that situation in this case, as the evidence against him is *de minimis* when compared with the evidence against the co-defendants. *See id*. In order to protect Mr. Fletcher's fundamental rights at trial, the Court should therefore sever his trial from that of his co-defendants.

A joint trial that permitted the government to use the GPS evidence against Mr. Bynum and Mr. White, but not against Mr. Fletcher would violate Mr. Fletcher's Fourth Amendment rights and be unduly prejudicial. No limiting instruction could cure this prejudice. No reasonable juror could be expected to use this evidence against Mr. White and Mr. Bynum and ignore it when considering the charges against Mr. Fletcher.

II.    **THE TRIAL OF MR. FLETCHER MUST BE SEVERED FROM THE TRIALS OF LARRY WHITE AND MALIK BYNUM BECAUSE THEY WILL PRESENT CONFLICTING AND IRRECONCILABLE DEFENSES**.

Rule 14 allows the Court to sever properly joined defendants in order to avoid prejudice to one defendant's position at trial. The presentation of "mutually antagonistic" or "irreconcilable"

3

defenses by a co-defendant often creates enough of this type of prejudice to mandate the severance of the defendants at trial. *Zafiro v. United States*, 506 U.S. 534, 538 (1993). For several reasons, the likely presentation of mutually antagonistic defenses in this case warrants severance of Mr. Fletcher's case from that of his co-defendants.

### A.   The Likely Presence of a "Second Prosecutor" Mandates Severance

Situations in which one defendant attempts to escape criminal liability by placing blame for the entire criminal act on his or her co-defendant provide the most extreme examples of the prejudice created when defendants present mutually antagonistic defenses.  In these circumstances, counsel for one defendant essentially becomes the "second prosecutor" of the other, and the latter defendant must counter the evidence and theories advanced not only by the government, but also by the co-defendant. The presence of the "second prosecutor" so prejudices such a defendant as to virtually eliminate his opportunity for a fair trial unless severance occurs.  *See United States v. Crawford*, 581 F.2d 489 (5th Cir. 1978) (trial court erred in not severing trials where each co-defendant's defense theory centered on a contention that the other was solely responsible for the crime).  *See also United States v. Romanello*, 726 F.2d 173, 177 (5th Cir. 1984) (cited in *Mitchell v. United States*, 569 A.2d 177, 182 n.4 (D.C. 1990)).

Based on the discovery provided, discussions with previous counsel and a review of other materials in the instant case, undersigned counsel believes that a "second prosecutor" scenario will develop should the Court try Mr. Fletcher in a joint trial with Mr. Bynum and Mr. White. The information available to undersigned counsel indicates that Mr. Bynum's defense will attempt to exonerate him by pointing an accusing finger at Mr. Fletcher. Because Mr. Bynum's defense will attempt to portray Mr. Fletcher as the primary actor in this incident, a substantial danger exists that the evidence and arguments presented by the co-defendants would provide the basis of the jury's conviction of Mr. Fletcher.  *See Romanello,* 726 F.2d at 177.

Mr. Fletcher will thus have to counter not only the evidence introduced by the government, but the significantly more compelling arguments and evidence presented by counsel for his co-defendant. In order to protect Mr. Fletcher right to a fair trial, the Court should sever his trial from that of the co-defendants charged in this case.

Federal Rule of Criminal Procedure 14 provides, *inter alia*, for relief from prejudicial joinder of defendants. While the Rule affords protection against all forms of prejudice which might arise from joinder of defendants, courts have recognized that "[p]erhaps the primary danger against which the rule is designed to guard is that of a [defendant] having to face what amounts to multiple prosecutors - the state and his co-[defendant's counsel]."  *United States v. Lee*, 744 F.2d 1124, 1126 (5th Cir. 1984) (citations omitted).

Several analyses have developed governing the assessment of prejudice arising from the antagonism of a co-defendant at trial. The two principal categories of cognizable prejudice in this area are: 1) the prejudice arising from the presentation of "conflicting and irreconcilable defenses" and 2) the unfairness of exposing the defendant to multiple attacks from both the government and the co-defendants; *i.e.*, the "second prosecutor problem."

The question whether severance is required by the co-defendant's posture as a "second prosecutor" is analytically independent of the question of whether severance is required on the grounds of "conflicting and irreconcilable defenses."  Even where a court concludes that severance is not warranted under the "conflicting and irreconcilable defenses" line of authority, severance is nevertheless required where, as here, joinder of defendants deprives the defendant of a fair trial by introducing "what is in effect a second prosecutor into a case, by turning each co-defendant into the other's most forceful adversary." *Zafiro,*, 506 U.S. at 544 (1993) (Stevens, J., concurring in the judgment) (footnote omitted) (citing *United States v. Tootick*, 952 F.2d 1078, 1082 (9th Cir.1991)); *Romanello*, 726 F.2d at 179; *See United States v. Sheikh*, 654 F.2d 1057, 1066 (5th Cir. 1981)

("[T]he taking of an adversarial stance on the part of counsel or co-[defendant] may generate trial conditions so prejudicial to the co-[defendant] under attack as to deny him a fair trial.").[2]

In *United States v. Tootick*, the Ninth Circuit further explained the manifestations of the prejudice arising from the co-defendant's role as a "second prosecutor":

> Defendants who accuse each other bring the effect of a second prosecutor into the case with respect to their co-defendant. In order to zealously represent his client, each co-defendant's counsel must do everything possible to convict the other defendant. The existence of this extra prosecutor is particularly troublesome because the defense counsel are not always held to the limitations and standards imposed on the government prosecutor. Opening statements as in this case, can become a forum in which gruesome and outlandish tales are told about the exclusive guilt of the "other" defendant. In this case, these claims were not all substantiated by the evidence at trial. Counsel can make and oppose motions that are favorable to their defendant, without objection by the government.
>
> Cross-examination of the government's witnesses becomes an opportunity to emphasize the exclusive guilt of the other defendant or to help rehabilitate a witness that has been impeached. Cross-examination of the defendant's witnesses provides further opportunities for impeachment and the ability to undermine the defendant's case. The presentation of the co-defendant's case becomes a separate forum in which the defendant is accused and tried. Closing arguments allow a final opening for co-defendant's counsel to portray the other defendant as the sole perpetrator of the crime.
>
> Joinder can provide the individual defendants with perverse incentives. Defendants do not simply want to demonstrate their own innocence, they want to do everything possible to convict their co-defendants. These incentives may influence the decision whether or not to take the stand, as well as the truth and content of the testimony.
>
> The joint trial of defendants advocating mutually exclusive defenses produces fringe benefits for the prosecution. Joinder in these cases can make a complex case seem simple to the [Court]: convict them both.

---

[2] In this regard, courts that have considered the "second prosecutor" problem have done so independently of their consideration of the issue of "conflicting and irreconcilable defenses." *See, e.g., Mitchell, supra; United States v. Wright*, 251 U.S. App. D.C. 276, 783 F.2d 1091 (1986); *United States v. Buena-Lopez*, 987 F.2d 657 (9th Cir. 1993); *Romanello, supra; Sheikh*, 654 F.2d at 1066.

> The government's case becomes the only unified and consistent presentation. It presents the [Court] with a way to resolve the logical contradiction inherent in the defendants' positions.  While the defendants' claims contradict each other, each claim individually acts to reinforce the government's case.  The government is further benefited by the additive and profound effects of repetition.  Each important point the government makes about a given defendant is echoed and reinforced by the co-defendant's counsel.

*Tootick*, 952 F.2d at 1082.

Counsel expects that the government may contend, *inter alia*, that Mr. Fletcher "fac[ing an] extra prosecutor in the guise of co-[defendants'] counsel," *Romanello,* 726 F.2d at 179, does not require severance, because all of the arguments and evidence proffered by the co-defendants would in any event be presented against Mr. Fletcher by the government whether Mr. Fletcher were tried jointly with the co-defendant or alone at a separate trial. Counsel respectfully submits that any such argument would in significant respects misconstrue the "second prosecutor" problem.

While the prejudice engendered by the adversarial stance of the co-defendant is enhanced by the prospect that the co-defendants may offer evidence against Mr. Fletcher beyond that offered by the government, that prejudice is in no way dependent upon the co-defendants offering such additional evidence. Indeed, one significant feature of the "second prosecutor" problem is precisely the prejudice generated where, as here, "[t]he government is further benefitted by the additive and profound effects of repetition [as] [e]ach important point the government makes about a given defendant is echoed and reinforced by defense counsel." *Tootick*, 952 F.2d at 1082.

The multiple attacks upon Mr. Fletcher here will dominate virtually every stage of a joint trial. Should the co-defendants, for example, choose to give an opening statement, the trial will begin with not one, but two statements forcefully arguing Mr. Fletcher's guilt. The testimony of each government witness implicating Mr. Fletcher will be presented numerous times, first through

the government's direct examination, and again through cross-examination by counsel for the co-defendant. Similarly, the testimony of any witness the co-defendant might call which inculpates Mr. Fletcher would presumably be elicited again and again in both direct examination and/or cross-examination by other counsel and the government. *See id*.

In sum, counsel for the co-defendant will become the "government's champion against [Mr. Fletcher]," creating "intolerable" prejudice and compelling the conclusion that "[a] fair trial [is] impossible under the circumstances." *Romanello*, 726 F.2d at 181-82.

Finally, unlike the standard for severance on the grounds of "conflicting and irreconcilable defenses," the criteria for severance under the fair trial standard do not in the first instance call for an assessment of the strength of the government's case. *See e.g., id*., at 181. Indeed, to a significant extent, the strength of the government's case against Mr. Fletcher is irrelevant to the fair trial/second prosecutor analysis. Rather, that analysis is focused primarily on the strength and primacy to his defense of the co-defendant's "case" against the defendant. *See e.g., id*.

Whatever claims the government may make regarding the strength of its case, severance is appropriate here as a consequence of the posture of co-defendant's counsel as a second prosecutor.

### Conclusion

For the reasons cited herein and any others that may appear to the Court, Mr. Fletcher asks this Court to sever Mr. Fletcher's trial from that of Larry White and Malik Bynum.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
ELIZABETH MULLIN
MARY PETRAS
Assistant Federal Public Defenders

8

625 Indiana Ave., NW- Suite 550
Washington, DC  20004
(202) 208-7500