**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **Case: 25-CR-150-02 (TSC)** |
| **v.** ) | |
| **MARK FLETCHER** ) | |

**MOTION TO SUPPRESS TANGIBLE EVIDENCE AND STATEMENTS**
**AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Mark Fletcher, the defendant, through undersigned counsel, pursuant to the Fourth and

Fifth Amendments to the United States Constitution, respectfully moves this Honorable Court to

suppress the use as evidence at trial, all fruits, including objects and statements, that resulted from

the unlawful search and seizure by officers of the Metropolitan Police Department on the 5300

block of Gay Street, NE Washington D.C. and all statements made in violation of Mr. Fletcher's

Fifth Amendment rights and his rights under *Miranda v. Arizona*.  Mr. Fletcher requests an

evidentiary hearing on this motion.  In support of this motion, counsel submits the following.

**Factual Background**

Mr. Fletcher and his co-defendants are charged with First Degree Murder (Felony Murder)

and related counts.  The three men are accused of robbing the decedent on July 2, 2021.  According

to discovery provided by the government, at some point in time, an individual shot in the direction

of the defendants and the decedent. The government believes that Mr. White subsequently fired

his gun and that the decedent suffered several gunshot wounds as a result. The decedent succumbed

from his wounds on the scene.

According to the government's representations, law enforcement arrived in front of 1356

Brentwood Road NE after ShotSpotter alerted to the sound of gunshots at around 8:41pm. The police found decedent Rosendo Miller on the ground suffering from gunshot wounds. He was pronounced dead soon after.

Relevant to this Motion, law enforcement stopped a Ford Fusion carrying Mr. Fletcher, Malik Bynum and Larry White around 10:53 pm in the 5300 block of Gay Street, NE Washington D.C.  The police immediately arrested the three men.  They did not have a warrant to arrest them.

## Argument

### I.    The police violated Mr. Fletcher's Fourth Amendment rights when officers seized him without reasonable articulable suspicion or probable cause.

At the time that Mr. Fletcher was stopped, the police did not have a warrant for his arrest or reasonable articulable suspicion for any intrusion. Probable cause is an essential prerequisite to an arrest. *Dunaway v. New York*, 442 U.S. 200, 213 (1979). Mr. Fletcher was seized when he was surrounded by officers as he was sitting in a Ford Fusion on the 5300 block of Gay Street, NE. He was ordered to put up his hands andopen the door and was not permitted to move. He was handcuffed and placed under arrest.

The officers did not have reasonable articulable suspicion to stop Mr. Fletcher for criminal conduct.  First, it is not apparent from the record whether there is reliable evidence that there were any officers that were aware whether Mr. Fletcher had any association with the crime. Although the defense anticipates that the government will claim that an officer witness identified Mr. Fletcher and the Ford Fusion from the video, that information is far from complete and a hearing is required to establish whether the police were entitled to rely upon it without presenting the information to an detached magistrate. Presently, the record is devoid of information as to what the witnesses knew when and about the appearance of Mr. Fletcher they purportedly recognized. Nor does the Court know what biases the witnesses may have had against Mr. Fletcher when they

made the identifications. A witness also apparently identified the Ford Fusion but it is unexplained how a witness could have possibly recognized the vehicle "as a Ford Fusion with a MD temporary tag of 266451T." Finally, law enforcement claims that it relied on GPS information placing Mr. Fletcher as the "only individual" in "close proximity" to the Brentwood Street location during the time of the homicide - a subjective, conclusory and speculative claim that was not authorized by a warrant.[1]

What is clear is that at the time of the arrest, there was no evidence that the officers saw criminal activity afoot. The warrantless seizure of Mr. Fletcher, therefore, was unlawful. All of the evidence seized and the statements allegedly made as a result of the encounter must be suppressed as the fruit of the unlawful seizure of Mr. Fletcher. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (if the evidence has been obtained through the exploitation of a Fourth Amendment violation the evidence must be suppressed).

Nor did the police have reasonable articulable suspicion that Mr. Fletcher was armed and dangerous, and in fact, no weapons were recovered. "It is the government's burden to provide evidence sufficient to support reasonable suspicion justifying any stop." *United States v. Castle*, 825 F.3d. 625, 634 (D.C. Cir 2016) (citations omitted). Although the seizure of Mr. Fletcher rose to an arrest immediately, the officers were not entitled to conduct a *Terry* stop. "Under *Terry*, and its progeny, a police officer may perform a protective frisk if he has reason to believe, based on 'specific and articulable facts … taken together with rational inferences from those facts,' that 'he is dealing with an armed and dangerous individual.'" *United States v. Holmes*, 385 F.3d 786, 789 (D.C. Cir. 2004) (quoting *Terry v. Ohio*, 392 U.S. 21, 27 (1968).

---

[1] Any such evidence also was obtained in violation of Mr. Fletcher's Fourth Amendment rights through the illegal placement of a GPS ankle monitor. *See* Defendant Fletcher's Motion to Suppress Evidence Obtained as a Result of Unlawful Warrantless Search, ECF X.

Here, the arresting officers were acting on speculative information lacking in specificity. The officers did not have even arguable reasonable articulable suspicion that Mr. Fletcher had committed or was committing a crime. The only descriptors with any particularity: the clothing including underwear, were not apparent to the officers. "The ultimate question is whether the description affords a sufficient basis for 'selective investigative procedures' vis-a-vis a universe made up of all persons within fleeing distance of the crime in question, and thus the characteristics of that group must be taken into account." LaFave, Wayne, Search and Seizure: A Treatise on the Fourth Amendment §9.5(h). The source of the information about the Ford Fusion remains ambiguous.

"What must be taken into account is the strength of those points of comparison which do match up and whether the nature of the descriptive factors which do not match is such that an error as to them is not improbable…" LaFave, Wayne, Search and Seizure: A Treatise on the Fourth Amendment §9.5(h). The nature of the descriptive factors that match up here, race and gender, fall well below the requisite threshold.

LaFave explains:

> [I]f it appears that the description is so general, taking into account the passage of time and similar factors bearing upon how many people are even potential suspects, that it would not permit the singling out of one person as the probable offender, an arrest may not be made. Assume, for example, that a supermarket robber has been described as being a fairly tall man of large build with dark hair who was wearing a red sweater. If a man fitting this description were to be located twenty minutes later and six blocks from the robbery scene, a court subscribing to the more-probable-than-not theory might well hold that there was not grounds for arrest because there "could have been more than one tall white man with dark hair wearing a red sweater abroad at night in such a metropolitan area."

LaFave, Wayne, Search and Seizure: A Treatise on the Fourth Amendment §9.5(h).

The evidence recovered from Mr. Fletcher and the car must be suppressed as a fruit of the unlawful warrantless stop of Mr. Fletcher and the Fusion. The Supreme Court has held that,

"searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted). Where the government seeks to introduce evidence seized without a warrant, it has the burden of showing that the evidence falls within one of the "few specifically established and well delineated exceptions" to the warrant requirement of the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971); *Katz*, 389 U.S. at 357. Here, the police officers did not have a search warrant to arrest and search Mr. Fletcher and lacked probable cause but arrested him anyway. Importantly, the officers relied entirely on hearsay and on a video without verifying with any actual eyewitness that any of the individuals or the car was in fact Mr. Fletcher, his co-defendants or the Ford Fusion.

> **II.** **Any Statements Allegedly Made by Mr. Fletcher Must Be Suppressed Because They Were Made Involuntarily and Taken in Violation of <u>Miranda v. Arizona.</u>**
>
> A. <u>The Court must suppress Mr. Fletcher's statements unless the government demonstrates that they were made voluntarily.</u>[2]

After he was stopped in a street encounter by Metropolitan Police Department officers, Mr. Fletcher was arrested and immediately placed in handcuffs. Police also interrogated Mr. Fletcher at the police station. They engaged in a back and forth conversation before officers read *Miranda* warnings to Mr. Fletcher. Before introducing those statements at trial, either in its case-in-chief or as impeachment or rebuttal evidence, the government bears the burden of proving that the statements were voluntary. *See Mincey v. Arizona*, 437 U.S. 385, 398 (1978); *Lego v. Twomey*, 404 U.S. 477, 489 (1972). The test for voluntariness is whether a statement is the "product of an essentially free and unconstrained choice by its maker." *Culombe v. Connecticut*, 367 U.S. 568,

---

[2] It is not clear whether there are any statements that the government intends to introduce.

602 (1961). The determination of whether a statement was made voluntarily "requires a careful evaluation of all the circumstances of the interrogation." *Mincey*, 437 U.S. at 401. The Court must consider the "totality of the circumstances" in deciding whether the defendant made his statement voluntarily. *Fikes v. Alabama*, 352 U.S. 191, 197 (1957); *see also Gallegos v. Colorado*, 370 U.S. 49, 52 (1962) (determination of whether an accused's statement was made involuntarily so as to render it inadmissible "involves close scrutiny of the facts of individual cases"). Specifically, the Court must examine the efforts to overbear Mr. Fletcher's free will in relation to his capacity to resist those efforts. *See Davis v. North Carolina*, 384 U.S. 737 (1966). The Court must examine Mr. Fletcher's background, experience, and conduct to determine whether his statements were the product of a "rational intellect and a free will." *Blackburn v. Alabama*, 361 U.S. 199, 207-08 (1980). The Court must suppress Mr. Fletcher's statements unless the government can demonstrate, in light of all of these considerations, that the statements were made voluntarily.

> B.      The Court must suppress Mr. Fletcher's statements because they were obtained in violation of *Miranda*.

Even if the statements were made voluntarily, *Miranda* requires suppression of Mr. Fletcher's statements because Mr. Fletcher was not apprised of his right against self-incrimination prior to the statements he made immediately after his arrest. *See, e.g., Pennsylvania v. Muniz*, 496 U.S. 582, 589-90 (1990). A person is in "custody" for purposes of *Miranda* when he "has been . . . deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Whether a person is in custody depends upon "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442 (1984). "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody)

that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). The government will be unable to demonstrate, at a hearing, that Mr. Fletcher's statements were not made in response to custodial interrogation – *i.e.*, in response to words or actions that officers should have known would elicit an incriminating response.

## Conclusion

For the reasons set forth above, and for such other reasons as this Court may determine at a hearing on this motion, Mr. Fletcher respectfully requests that this motion be granted and that the Court suppress the use of all evidence seized and collected. Mr. Fletcher also requests that any statements allegedly made by Mr. Fletcher be suppressed.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

_____

ELIZABETH MULLIN
MARY PETRAS
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500