**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


**UNITED STATES OF AMERICA**          :

            **v.**                    :          **25-CR-150-02 (TSC)**

**MARK ANTHONY FLETCHER, III**        :


### <u>MOTION FOR CURATIVE INSTRUCTION</u>

During closing argument on May 22, 2026, the Court *sua sponte* interrupted counsel for

Mark Fletcher on multiple occasions, inaccurately suggesting that counsel was making improper

arguments and undermining the strength of the defense arguments and counsel's credibility with

the jury. The Court's interruptions, statements before the jury, demeanor and tone together

conveyed the Court's view that counsel was not making proper arguments. As set forth below,

the arguments were all within the bounds of permissible closing arguments, and Mr. Fletcher's

defense is prejudiced by the impression conveyed to the jury. To alleviate the prejudice,

Mr. Fletcher requests a curative instruction.

The Sixth Amendment guarantees Mr. Fletcher the right to the assistant counsel of

counsel, including the right to have counsel make a closing argument. *Herring v. New York*, 422

U.S. 853 (1975) ("'The Constitutional right of a defendant to be heard through counsel

necessarily includes his right to have his counsel make a proper argument on the evidence and

the applicable law in his favor, however simple, clear, unimpeached, and conclusive the evidence

may seem, unless he has waived his right to such argument, or unless the argument is not within

the issues in the case, and the trial court has no discretion to deny the accused such right.'"

(citation omitted)); *United States v. DeLoach*, 504 F.2d 185, 189 (D.C. Cir. 1974) ("A criminal

defendant's constitutional rights to counsel and to a jury trial encompass a right to have his

theory of the case argued vigorously to the jury."). "[N]o aspect of [trial] advocacy could be

more important than the opportunity finally to marshal the evidence . . . before submission of the

case to judgment." *Herring*, 422 U.S. at 862. The Court does have "great latitude in controlling

the duration and limiting the scope of closing summations" [and] "may limit counsel to a

reasonable time and may terminate argument when continuation would be repetitive or

redundant," *id.*, but as the D.C. Circuit has explained:

> We must make clear that a trial judge should not interrupt every
> argument which he thinks undesirable. Here as in other areas there
> are 'gray zones' of argument which, though they should not be
> made, do not warrant interruption and would not support a mistrial.
> The choice to be made by the trial judge is one of sound judicial
> discretion which should not be disturbed in the absence of abuse.
> The Problem is one of balance; a serious transgression is
> impermissible by definition and it is as to these that intervention by
> the trial judge is called for. Other deviations can be dealt with by
> the trial judge's post-trial admonition to counsel to avoid repetition
> of any departure from proper argument. This has long been an
> accepted method of instructing lawyers on courtroom conduct.

*Harris v. United States*, 402 F.2d 656, 657 (D.C. Cir. 1968). Counsel for Mr. Fletcher made no

improper argument, much less a "serious transgression." Here, the Court's interruptions

prejudiced Mr. Fletcher and warrant a curative instruction. *DeLoach*, 504 F.2d at 189 ("The trial

court has broad discretion in controlling the scope of closing argument. That discretion is abused,

however, if the court prevents defense counsel from making a point essential to the defense.").

Mr. Fletcher is charged as an accomplice with the most serious offense under the law,

"First Degree Murder While Armed – Felony Murder." Superseding Indictment, ECF 87 at 7.

The elements the government must prove to establish accomplice liability for a felony murder

are complicated. Mr. Fletcher's defense is particularly nuanced, hinging on the surveillance

videos introduced by the government. Mr. Fletcher maintains that the government has not proven

their interpretation of the videos beyond a reasonable doubt because an alternative interpretation

is supported by the videos, other evidence, and the lack of evidence. Mr. Fletcher, along with his co-defendants, stipulated to much of the evidence and asked few questions on cross-examination.[1] Presenting his defense through cross-examination would have been inappropriate because the interpretation of the videos is a question for the jury.[2] Instead, Mr. Fletcher relied on his constitutional right to present his interpretation of evidence through counsel during closing arguments, while at the same time ensuring that the jury understands that he has no burden to prove his interpretation. *United States v. Moore*, 651 F.3d 30, 52 (D.C. Cir. 2011) ("'The sole purpose of closing argument is to assist the jury in analyzing the evidence,'" and hence courts have recognized that the prosecutor (as well as defense counsel) is afforded some leeway in 'stat[ing] conclusions drawn from the evidence'[.]" (quoting *United States v. Bailey,* 123 F.3d 1381, 1400 (11th Cir.1997))). Because the three co-defendants are presenting interrelated defenses, counsel for the defendants jointly decided that counsel for Mr. Fletcher would argue first and present the bulk of the defense closing argument.

Counsel for Mr. Fletcher began her closing argument by summarize the most important parts of the surveillance videos from the defense perspective, using a PowerPoint presentation to display screenshots and clips. In doing so, counsel was very careful not to "testify" as the Court later suggested counsel had done. Counsel was careful to be clear that she was drawing inferences based on the evidence, intentionally and frequently using qualifying phrases such as, "the videos show," "you can tell from his reaction on the video," and "it's a fair inference," and describing how the evidence allowed for inferences regarding Mr. Fletcher's expectations based

---

[1] The joint stipulations and coordination between defense counsel allowed the case to be presented in full in less than half the time the parties had predicted.

[2] The Court appropriately limited Officer Anderson's ability to interpret the videos to identifying the individuals depicted. Tr. 5/19/2026 at 85-86.

on his circumstances and conduct. *DeLoach*, 504 F.2d at  (defense counsel properly drew

inferences from evidence, although "counsel could have decorated his argument more liberally

with such caveat phrase"). Although counsel may not have used a qualifying phrase every time

she argued an inference from the evidence, counsel did not "testify" as the Court suggested, but

rather appropriately drew inferences from the evidence. *Id.* ("Furthermore, the presumption of

innocence, the reasonable doubt standard, and the prohibition on directed verdicts of guilty

combine to leave standing few if any limitations on the factual inferences which a jury may

properly draw in the defendant's favor.")

 After summarizing the heart of the facts that support the defense, counsel for Mr. Fletcher

turned to discussing the most important part of the law applicable to the defense, the

requirements of accomplice liability for felony murder and the government's burden of proof. In

doing so, counsel displayed two full paragraphs of the court's felony murder instruction (the

paragraph describing principal liability and the paragraph addressing accomplice liability) with

the portions critical to the defense highlighted. The slides displayed are below.

**FIRST-DEGREE FELONY MURDER**

 The government need not prove that Larry White, Mark Fletcher, or Malik Bynum intended to kill Rosendo Miller.  Any killing, even if done without the intent to kill and even if accidental, is murder in the first degree if done in committing or attempting to commit armed robbery.  The crime of robbery is a continuing offense as long as the removing or carrying away of property continues.  There must, however, be a causal connection between the homicide and the underlying felony; mere coincidence in time and place is not enough.  One who commits an armed robbery cannot claim the right of self-defense against either the intended victim of the robbery or any person intervening to prevent the crime.

4

**FIRST-DEGREE FELONY MURDER**

If two or more people, acting together, are committing or attempting to commit robbery and one of them, in the course of the robbery and in furtherance of the common purpose to commit robbery, kills a human being, both the person who committed the killing and the person or persons who aided and abetted in the robbery are guilty of felony murder, even if the killing was accidental. And any person who aids and abets the commission of robbery is guilty of felony murder for a killing that was committed in furtherance of a common purpose to commit that robbery or a killing that was, in the ordinary course of things, a natural and probable consequence of acts done in committing that felony. The government must prove beyond a reasonable doubt that the killing by the principal was within the scope of the robbery. A person participating in a robbery is not guilty of first degree felony murder if his accomplice kills the deceased in a separate and distinct act and to satisfy the accomplice's own ends.

**FIRST-DEGREE FELONY MURDER**

If two or more people, acting together, are committing or attempting to commit robbery and one of them, in the course of the robbery and in furtherance of the common purpose to commit robbery, kills a human being, both the person who committed the killing and the person or persons who aided and abetted in the robbery are guilty of felony murder, even if the killing was accidental. And any person who aids and abets the commission of robbery is guilty of felony murder for a killing that was committed in furtherance of a common purpose to commit that robbery or a killing that was, in the ordinary course of things, a natural and probable consequence of acts done in committing that felony. The government must prove beyond a reasonable doubt that the killing by the principal was within the scope of the robbery. A person participating in a robbery is not guilty of first degree felony murder if his accomplice kills the deceased in a separate and distinct act and to satisfy the accomplice's own ends.

Prior to closing arguments, the defense has asked the Court to include the following statements of law in the first degree felony murder instruction:

> The government must prove beyond a reasonable doubt that Mr. Miller's death occurred within the scope of the robbery and was not merely coincidental in time and place to the robbery. The government must establish, beyond a reasonable doubt, that an unbroken chain of facts and circumstances link the robbery to Mr. Miller's death. An accomplice is not guilty of felony murder if the homicide is a fresh and independent product of the killer's mind outside of, or foreign to, the common purpose to commit the robbery, such as the result of an unexpected response to an intervening event. The government must prove beyond a reasonable doubt that Mr. Miller's death was not the result of an intervening independent purpose.

Defendant Fletcher's Proposed Final Jury Instructions and Objection, ECF 99 at 5. The Court agreed to include the first proposed sentence but refused to include the remaining portions of

Mr. Fletcher's request, indicating that the remainder was repetitive. The Court did not find that these were inaccurate statements of the law and noted that counsel could argue them. After discussing the Court's instructions, counsel then began to do so by discussing the meaning of the standard instruction as it applies to this case.

The government had similarly displayed the Court's jury instructions and discussed them, without interruption from the Court, even when government counsel inaccurately stated that coconspirator liability applied to felony murder.[3] In contrast, the Court *sua sponte* interrupted defense counsel to take issue with counsel's argument as to the law, although Mr. Fletcher's counsel had not misstated the law. First, the Court took issue when counsel argued, "What all of that means is the government must prove beyond a reasonable doubt that there's an unbroken chain of facts and circumstances link the robbery to Mr. Miller's death. That link was broken here by that unrelated shooting--" Tr. at 13.[4]  Yet, this is precisely what the law requires. *Marshall v. United States*, 623 A.2d 551, 558 (D.C. 1992) (felony murder requires "unbroken chain of facts and circumstances which link" felony and murder); *Coleman v. United States*, 295 F.2d 555, 564 (D.C. Cir. 1961) ("Government was bound to prove beyond a reasonable doubt that there had been an unbroken continuity between the robbery and the killing.").

Despite the accuracy of counsel's statement of the law, the Court interrupted and in front of the jury said, "Ms. Petras, please be careful on how you state what the government must prove beyond a reasonable doubt that's not in an instruction." Tr. 13.  This not only suggested that

---

[3] At the Court's request, defense counsel waited until government counsel finished her argument to object. The Court declined to give the jury any specific instruction that this was a misstatement of the law, but agreed to add a specific statement to the coconspirator liability instruction, clarifying that it did not apply to felony murder.

[4] Unless otherwise noted, all "Tr." cites refer to the afternoon session transcript of proceedings on May 22, 2026.

counsel was making an improper argument, but incorrectly told the jury that the government does not have to prove beyond a reasonable doubt that there is an unbroken chain of facts and circumstances that link the robbery to Mr. Miller's death, when both the D.C. Court of Appeals (interpreting this D.C. law) and the D.C. Circuit have said the government does have to prove this. *See Marshall*, 623 A.2d at 558; *Coleman*, 295 F.2d at 564.[5]

The Court's primary complaint was that counsel's statement was not how the law is stated in the Court's instruction, Tr. 14, but there is no rule limiting counsel to the words in the jury instruction. Counsel is limited to accurate statements of the law. The arguments here regarding the legal requirements for a conviction where necessary to place facts in context, particularly when the defense hinges on nuanced arguments regarding accomplice liability. Even if there was a rule that prohibited making an accurate statement of the law using words other than those in the jury instruction, doing so certainly is not the type of "serious transgression" that warrants court intervention. *See Harris*, 402 F.2d at 657.

Following the Court's first interruption, counsel tried again to explain that in this case the causal link was broken by the unrelated shooting on the corner, arguing what the jury instruction meant. This is the heart of Mr. Fletcher's defense. But the Court interrupted again. Tr. 14-15. The Court said, "Ms. Petras," in a tone and with a demeanor that conveyed a warning to move on.[6] *Id.* The Court did so before the jury in a tone that suggested the Court's strong disapproval.

---

[5] Counsel's other legal arguments also were well-supported by case law. *See Christian v. United States*, 394 A.2d 1, 48 (D.C. 1978) ("there is no criminal responsibility on the part of an accomplice if the homicide is a fresh and independent product of the killer's mind, outside of, or foreign to the common design"); *United States v. Heinlein*, 490 F.2d 725, 733-37 (D.C. 1973) (error for trial court to forbid defense that fatal stabbing of victim was coconspirator's "unexpected response" to victim's slap in the face and independent of common purpose to rape).

[6] Counsel recall the Court also at one point explicitly telling counsel to "move on," but that rebuke does not appear in the transcript.

These interruptions suggested to the jury that Counsel was making an improper or invalid argument when she was not.

Through the *sua sponte* interruptions, the Court gave the jury the impression that counsel's arguments were incorrect, when in fact they were proper statements of the law. The interruptions by the Court alone gave this impression, signaling that the Court was reprimanding counsel (because there would be no other reason to interrupt). When counsel had not misstated the law, prohibiting counsel from fully arguing the point that the standard for felony murder has not been met was highly prejudicial. To the jury, it no doubt appeared from the Court's demeanor that the defense was not making a valid argument for acquittal.

The Court's interruptions and suggestions that counsel misstated the government's burden was particularly damaging given the Court's prior ruling on the defense theory of the case instruction. The Court agreed to give the follow defense instruction for Mr. Fletcher:

> Mr. Fletcher's defense is that he did not fire a gun or shoot Mr. Miller, and when Mr. White shot Mr. Miller, Mr. White did not do so in furtherance of, or within the scope of, the common purpose to commit the robbery.  Mr. Fletcher contends that Mr. White discharged his firearm in response to a shooting that began with an unidentified person firing a gun elsewhere.  Mr. Fletcher further contends that Mr. White's reaction to an unrelated shooting was separate and distinct from the robbery.

The Court, however, refused to instruction the jury that,

> If you find that the government has not proven beyond a reasonable doubt that the shooting of Mr. Miller was both during the course of the robbery and in furtherance of the common purpose to commit the robbery—and not merely coincidental in time and place to the robbery or the result of a separate and distinct act—you must find Mr. Fletcher not guilty.

That sentence was modeled after the last sentence of the Redbook Instruction 9.200 (Alibi) and designed to ensure that, although Mr. Fletcher was putting forward a defense, it was not his

burden to prove that defense. *See United States v. Alston*, 551 F.2d 315, 319 (D.C. Cir. 1976) (when giving instruction regarding alibi defense, reversible error to fail to ensure that jury understands that burden of proof never shifts); *see also Gray v. United States*, 549 A.2d 347, 349 n.3 (D.C. App. 1988) ("Although sometimes characterized as an affirmative defense, strictly speaking [alibi] is not. Rather, it is a denial of one fact which the government must prove as part of its case, namely, that the defendant was present at the scene of the crime. . . Thus, to be successful, an alibi need only raise a reasonable doubt in the minds of the jurors that the defendant was there." (citations omitted)). Just as an alibi defense is an attack on one fact the government must prove, so too is Mr. Fletcher's defense that the government has not proven that Mr. White shot Mr. Miller in an act separate and distinct from the robbery. Thus, just as when an alibi instruction is given, a defense theory instruction involving a challenge to an element of the offense should be followed with a statement ensuring the jury understands that the burden of proof remains with the government. The Court's interruptions of Mr. Fletcher's closing arguments regarding the requirements for a conviction for felony murder and the government's burden to prove those requirements, not only incorrectly suggested that the arguments were inaccurate and not supported in law, but also undermined counsel's ability to ensure the jury understands that Mr. Fletcher has no burden to prove his defense.

After *sua sponte* interrupting counsel regarding the legal requirements for accomplice liability, the Court interrupted counsel to accuse her of making a missing evidence argument when she had made no such improper argument. Tr. 26-27. As the D.C. Circuit has explained, making arguments about the lack of evidence is not the same as making a missing evidence or missing witness argument. *See United States v. Lawson*, 494 F.3d 1046, 1053 (D.C. Cir. 2007). Missing evidence or missing witness arguments ask the jury to infer that a missing piece of

9

evidence would have supported the defense and require a showing that the government has a special ability to produce the evidence or witness at trial. *Id.* In contrast, making arguments based on the lack of evidence are permissible and require no such showing. *Id.*

Here, counsel argued only that the video the government gave the jury did not include the area north of Brentwood Road on 14th Street, showing Defense Exhibit 3 with the area at issue circled, as shown below.



These facts were presented to the jury during the cross-examination of Officer Anderson. In closing, counsel argued:

> But they didn't bother to give you any video of what's going on north of 14th Street.
> As Officer Anderson explained to you, they gave you these views, and they also collected this view of the very boring video I made everyone watch, of the alley behind the stores.
> But they didn't give you any video of this area north of Brentwood Road where the men "pulled up." We don't know what was on that side of the liquor store or what was going on because there is no video that was collected.
> But you can see from their own –

10

Tr. 26-27. The Court then interrupted again, in a chastising tone, "Ms. Petras, get on the phone, please." That tone alone again told the jury that the Court thought defense counsel was making an improper argument, undermining her credibility and the defense. But counsel had made no inference, no suggestion, no argument that the jury should infer what any video of that area would have shown. Counsel only made the lack of evidence argument that D.C. Circuit has held is permissible. *Lawson*, 494 F.3d at 1053. Once again, counsel made no transgression, much less the type of "serious transgression" that warrants court intervention. *See Harris*, 402 F.2d at 657.

After interrupting counsel, during the bench conference, the Court invited the government to object and they did, arguing that counsel had that video of the area north of 14th Street. That was not accurate. The argument on this issue occurred while the jury was in the courtroom, although the husher was on. During the argument, government counsel pointed to her computer and insisted that the defense had video of this area. The truth is that the only camera view turned over to the defense that was not presented to the jury was the view below.



That view does not include the area of 14th Street north of the intersection of Brentwood Road and 14th. The Court's reaction to this argument also left the jury with the impression that defense counsel said something inaccurate, further undermining her credibility.

11

During that bench conference that followed the Court also took issue with counsel's argument regarding the presumption of innocence. Counsel argued:

> The presumption of innocence protects everyone who's charged in a United States court. It protects us all. It protects anyone like Mr. Fletcher who's sitting here charged with a murder he didn't commit. It protects everyone against overcharging as well, like what happened here.

Tr. 16. Although government counsel had not objected, the Court chastised counsel for using the word "overcharging." Like counsel other arguments, that argument was based entirely on what has happened before the jury in this case and was not inappropriate. Mr. Fletcher has conceded that the jury can convict him on conspiracy, armed robbery, and possession of a firearm during a crime of violence (robbery), but the government wants the jury to convict him of more, felony murder and possession of a firearm during a crime of violence (first degree murder while armed – felony murder). There is nothing inappropriate with describing, in Mr. Fletcher's view, as government overcharging. Mr. Fletcher maintains the evidence does not support those charges. The Court's opinion that there is "a mountain of evidence," Tr. 28, to prove the charges is not relevant, nor is the fact that the charges were brought by indictment. The question is for the jury to decide, without influence from the Court, if the facts support the charge.

The Court also interrupted counsel after she argued:

> But don't let that argument fool you either, because when determining whether the government has proven felony murder, it doesn't matter why Mr. White fired his gun *in the way* that he did. What matters is that he fired it in relation to an unexpected intervening event and not in furtherance of the robbery.

Tr. 37-38. Counsel was making a distinction between what the defense viewed as important versus what counsel anticipated the government would focus on in rebuttal argument. The government, of course, was free to argue in their rebuttal that how Mr. White fired was very

12

important and mattered a great deal, but that does not preclude the defense from arguing that how he shot the firearm was not important in this case. There was nothing inappropriate about an argument designed to get the jury to focus on the facts important to the defense theory. Counsel's argument was no different than government counsel's argument that it did not matter who shot the first shot from the corner, when the defense contends that it matters very much because it demonstrates that the shooting and Mr. White's reaction to it was unrelated to the robbery—a separate and distinct act.

The Court's concern with that argument is not clear, but following the argument the Court *sua sponte* asked if there was an objection—again in front of the jury and again strongly signally the Court's view that counsel was making improper arguments when she was not doing so. After the government responded that there was an objection, without explaining why, the Court held another bench conference and chastised counsel for going past 45-mintues and said "you're interpreting my instructions and I told you all not to do this, which is why I'm interrupting your closing argument." Tr. 38. Given the Court's pressuring regarding the time and wanting to address other arguments, counsel simply stated, "Understood." *Id.*

Throughout counsel's argument, the Court's view of counsel was clear from the Court's demeanor and the Court's decision to repeatedly interrupt counsel when there was no objection. Through the Court's visible reactions and tone, even when the husher was on, it was clear that the Court did not believe counsel was making proper arguments, although she was.

Finally, the Court's statements rushing and truncating Mr. Fletcher's closing argument in front of the jury were prejudicial. Tr. 36, 38, 40. While preparing and presenting Mr. Fletcher's closing argument, counsel was keenly aware of the Court's stated intention to have all parties present arguments in a single day. Doing so was in the best interests of Mr. Fletcher and the co-

defendants, and thus all defense counsel shared the Court's concern for ensuring there was enough time to accomplish this. As noted above, defense counsel coordinated their interrelated defenses throughout trial. They discussed the presentation and timing of closing arguments before arguments began. The defense plan was for counsel for Mr. Fletcher to go first and explain the heart of the defense, with co-defendant counsel following with the factual and legal distinctions that applied to their clients.

Before closings began, the Court noted that it was *not* imposing time limits on arguments and did not ask the parties to each estimate the length of closings. When Mr. Fletcher's counsel practiced the closing argument with colleagues, completing it took less than 45 minutes. The government's closing argument took at least 50 minutes, beginning at approximately 12:10 p.m. and finishing at approximately 1:00 p.m. Given that courts generally allow counsel equal time, with the government splitting their time between their closing and rebuttal arguments, counsel for Mr. Fletcher had no reason to believe it was necessary to explain the length of her argument before it began or explain the coordination planned by defense counsel, particularly when throughout the trial, counsel for Mr. Fletcher took the lead on presenting defense positions and the coordination between counsel was obvious.

Although the Court has discretion to control the length of arguments, the limitation imposed here was unreasonable and unnecessary. The Court's limitations were unreasonable because the Court did not tell counsel prior to her argument that she was limited to 45 minutes, but when counsel was 45 minutes into the argument—including time spent responding to the Court's interruptions—the Court, in front of the jury, said, "Ms. Petras we're past 45 minutes. Just letting you know." Tr. at 36. This too conveyed to the jury that counsel was acting improperly by violating a ruling by the Court regarding at time limitation, but the Court had not

14

imposed any limitation. Because the Court began to rush her to finish after interrupting counsel

multiple times and incorrectly accusing her of making improper arguments,  counsel recognized

that arguing with the Court for more time during closing argument only would have further

delayed the closing, risking the government seeking to present rebuttal another day which would

have prejudiced Mr. Fletcher. For that reason, counsel truncated her argument as the Court

pressured her to finish. Again, leaving the jury with the impression that Mr. Fletcher's counsel

was making inappropriate or legally unsound arguments, despite the fact that her arguments were

rooted in the facts of the case and well-established law.

The Court's decision to impose time limits after counsel began arguing and without

telling counsel also was unnecessary. Allowing counsel for Mr. Fletcher to finish her full

argument would not have prevented the parties from completing arguments that afternoon. Even

with interruptions, all counsel were able to finish arguments, and the Court also had time to give

final instruction to the jury that afternoon.[7]

The Court's interruptions, limitation on arguments regarding the requirements for a

felony murder conviction, demeanor and limitation on the length of closing argument undercut

the defense arguments and counsel's credibility with the jury. The Court has given Redbook

Instruction 2.102, including:

> You may not take anything I may have said or done as indicating
> how I think you should decide this case. If you believe that I have
> expressed or indicated any such opinion, you should ignore it. The
> verdict in this case is your sole and exclusive responsibility.

---

[7] The Court's suggestion that counsel used 15 minutes of counsel for Mr. Bynum's time, Tr. 42, was inaccurate. The Court did not impose specific time limits or divide the afternoon's time so the basis for the Court's calculation is unclear. Moreover, counsel was well-aware of the amount of time counsel Mr. Bynum need to present his closing because defense counsel coordinated the defense and shared their closings with each other.

However, under the circumstances here, that instruction is insufficient to cure the prejudice to Mr. Fletcher. By interrupting the closing argument, particularly when the Court did so absent any objection from the government, the Court sent an undeniable signal that counsel was not within the bounds of proper argument, when in fact, as outlined above, she was well within bounds. The Court's actions not only limited counsel's proper arguments but also directly impacted counsel's credibility and the strength of the arguments, while at the same time limiting counsel's time to present argument.

To remedy the effect on counsel's credibility and the defense, Mr. Fletcher respectfully requests that before the jury begins deliberation on Tuesday, May 26, 2026, the Court give the following instruction, which includes the previously requested clarifications of the law and the government's burden, and also remedies the impression of defense counsel's arguments projected by the Court's interruptions and demeanor:

> Before you begin your deliberations, I want to clarify a few points. When I interrupted closing argument made by counsel for Mark Fletcher, I did not intend to suggest that her arguments were incorrect statements of the law or project any opinion as to the issues before you. To be clear, counsel's arguments were not improper. The government must establish, beyond a reasonable doubt, that an unbroken chain of facts and circumstances link the robbery to Mr. Miller's death. An accomplice is not guilty of felony murder if the homicide is a fresh and independent product of the killer's mind outside of, or foreign to, the common purpose to commit the robbery, such as the result of an unexpected response to an intervening event. The government must prove beyond a reasonable doubt that Mr. Miller's death was not the result of an intervening independent purpose. If you find that the government has not proven beyond a reasonable doubt that the shooting of Mr. Miller was both during the course of the robbery and in furtherance of the common purpose to commit the robbery—and not merely coincidental in time and place to the robbery or the result of a separate and distinct act—you must find Mr. Fletcher not guilty.

The Court has "wide discretion" in monitoring the trial, however, "there is a limit to how far a district court may go." *United States v. Donato*, 99 F.3d 426, 435 (D.C. Cir. 1996). As the D.C. Circuit has noted, "'jurors hold the robed trial judge in great awe and reverence' and '[her] lightest word or intimation is received with deference, and may prove controlling.'" *United States v. Barbour*, 420 F.2d 1319, 1322 (D.C. Cir. 1969) (citations omitted). "[I]t is certainly true that a jury is likely to give great credence to a judge's view . . . ." *Donato*, 99 F.3d at 438. Here, the Court's response to Mr. Fletcher's closing argument suggested that the Court mistrusted defense counsel and the defense being presented. This was particularly prejudicial given that in doing so, the Court curtailed proper arguments that went to the heart of the defense, incorrectly suggesting that the defense was not rooted in the law. The proposed instruction is necessary to correct the impression that counsel's arguments were improper.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

_____
MARY MANNING PETRAS
ELIZABETH A. MULLIN
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

17